FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

04 OCT 29 PM 5: 1

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **IDA JOHNSON, on behalf of herself**<br>**and all others similarly situated,** | ) )<br>) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) ) **Civil Action No. CV-99-S-3292-NE** |
| **MUTUAL SAVINGS LIFE**<br>**INSURANCE COMPANY,** | ) )<br>) |
| **Defendant.** | ) ) |

ENTERED

OCT 2 9 2004

## MEMORANDUM OPINION

This action is before the court for final approval of the proposed class action

settlement. Plaintiff requests the court to award class counsel $2.35 million in

attorneys' fees and reimbursement of expenses under the common fund doctrine, and

notes that a "lodestar cross-check confirms the reasonableness of the requested

award."[1]

The general rule, known as the "American Rule," is that attorneys are paid

according to contract with their clients.[2] "The rule has a number of exceptions,

however, pursuant to which courts may award attorney's fees to a prevailing party.

---

[1]Doc. no. 103 (Plaintiff's Submission), 26, 32.

[2]In many countries outside of the United States, the general rule, known as the "English Rule," is that a prevailing litigant is entitled to recover attorney's fees from his or her opponent. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:1, at 503-504 (4th ed. 2002).



Two significant exceptions are statutory fee-shifting provisions and the equitable common fund doctrine." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:1, at 504 (4th ed. 2002).

Plaintiff claims that defendant discriminated against her and other class members on the basis of their race, in violation of 42 U.S.C. §§ 1981 and 1982.[3] Congress has legislated that, where a party institutes suit under § 1981 or § 1982, "the court, in its discretion, may allow the prevailing party[4] . . . a reasonable attorney's

---

[3]Doc. no. 53 (third amended class action complaint, ¶¶ 66-76.

[4]The Eleventh Circuit, in *Smalbein v. City of Dayton Beach*, 353 F.3d 901 (11th Cir. 2003), held that a plaintiff entering into a settlement agreement with defendant could qualify as a "prevailing party" under 42 U.S.C. § 1988(b).
    The appropriate test is whether there is a "court-ordered . . . 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 904-905 (ellipses in original) (quoting *Buckhannon Board & Care Home, Incorporated v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 604, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (in turn quoting *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792-93, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989))).
    The Eleventh Circuit found that there was such a "material alteration of the legal relationship of the parties" where plaintiffs settled their claims with defendants (1) "pursuant to an agreement that the district court then incorporated into its order of dismissal and [2] over which it retained jurisdiction for the enforcement of its terms." *Smalbein*, 353 F.3d at 904-906.
    Here, plaintiff appears to qualify as a prevailing party under the Eleventh Circuit's interpretation of § 1988(b). The proposed settlement stipulates that "the Parties will seek and obtain from the Court a Final Judgment and Order Approving Settlement. In order for this settlement to become effective, the Final Judgment and Order must, among other things . . . dismiss the Action with prejudice . . . ." Doc. no. 92 (proposed Class Action Stipulation of Settlement, VIII(B)). This satisfies the first part of the "material alteration" test.
    The settlement also stipulates that plaintiff and all class members "hereby release, remise and forever discharge [defendant] . . . . of and from, any and all actual and potential causes of action, claims for damages, awards, equitable, legal and administrative relief," etc. Doc. no. 92 (proposed Class Action Stipulation of Settlement), VIII(A). The court thus retains jurisdiction to enforce settlement terms "related to the release and discharge of all claims . . . ." *Smalbein*, 353 F.3d at 906 & n. 3. This satisfies the second part of the "material alteration" test.

fees as part of the costs . . . ." 42 U.S.C. § 1988(b).

Even so, there is compelling authority that the common fund doctrine may also apply. In *Boeing Company v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980), the Supreme Court recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 478, 100 S. Ct. at 749 (citing, *e.g.*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)). The Court explained that the common fund doctrine is particularly applicable where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479.

The Seventh and Ninth Circuits have addressed whether the applicability of a fee-shifting provision, such as 42 U.S.C. § 1988(b), precludes district courts from granting attorneys' fees and expenses under the common fund doctrine. The Ninth Circuit, in *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003), stated that "Congress did not explicitly forbid the use of the common fund doctrine in cases potentially involving . . . [42 U.S.C.] § 1988, and we see no reason to infer that it did so implicitly." *Id.* at 968. The Seventh Circuit, in *Florin v. Nationsbank of Georgia*, 34 F.3d 560 (7th Cir. 1994), concluded that attorneys representing class members

3

could recover attorneys' fees under the common fund doctrine even though the case was initiated under a fee- shifting ERISA statute. *Id.* at 563-564.

While the court recognizes *Boeing* and *Florin* as persuasive authority, it cannot say with certainty that the Eleventh Circuit will agree, because there is contrary authority. The Third Circuit, in *Brytus v. Spang & Company*, 203 F.2d 238 (3rd Cir. 2000), suggested that a district court may preclude plaintiffs from recovering attorneys' fees under the common fund doctrine if a fee-shifting statute applied, and the defendant was financially able to pay attorneys' fees under that statute. *Id.* at 247.[5] This court is therefore inclined to evaluate plaintiff's requests for fees and

---

[5]The court recognizes that *Brytus* is distinguishable from our case. In *Brytus*, class counsel attempted to recover fees under the common fund doctrine, *in addition* to what it recovered under the applicable fee-shifting statute. The Third Circuit's precise holding was that the district court did not abuse its discretion by denying class counsel's motion for *additional* recovery under the common fund doctrine. *Id.* at 240, 247. Nevertheless, the Third Circuit's dicta gives this court some pause.

> This is not to say that the common fund doctrine may never be applied in a case for which there is a statutory fee provision and which goes to judgment [, thereby providing the basis for the statutory fee in some cases]. One such instance could be when the defendant responsible for the statutory fee has become bankrupt or otherwise has insufficient funds. Another is when there has been a showing that competent counsel could not have been obtained for that case or that line of cases. No such showing has been attempted here. We see no reason to list all the other possible situations.

*Brytus*, 203 F.3d at 247.

*Brytus* also raises a secondary, yet important, issue. The court noted that "the distinction between the statutory fee and the fee from a common fund is more than the amount of the fee; *it is the party who pays the fee.*" *Id.* at 247 (emphasis supplied). Generally, "an award of fees from the common fund would deprive the beneficiaries of a portion of the award, whereas it [is] defendant . . . who [is] responsible for the statutory fee." *Id.*

This distinction does not appear to apply to our case. As class counsel notes, the "requested

4

expenses with equal rigor under both the common fund doctrine *and* § 1988(b).

The "lodestar" analysis is the approved method for determining statutory fee-shifting awards. *See, e.g., Camden I Condominium Ass'n Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).[6] The "lodestar" requires the court to evaluate whether attorneys billed a reasonable number of hours, whether they billed reasonable hourly

---

attorneys' fees and expenses are paid separately by [defendant] and in *no way* reduce the level of benefits made available to the Class" (doc. no. 107, Joint Declaration of Watson and Whatley, ¶ 58) (bold and italics in original). This is significant because it eliminates the possibility that class counsel strategically invoked the common fund doctrine, and not § 1988(b), to save defendant from paying attorneys' fees and expenses.

[6]The Eleventh Circuit, in *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999) explained:

> A reasonable attorney fees award under 42 U.S.C. § 1988 is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 1544, 79 L. Ed. 2d 891 (1984). "This 'lodestar' may then be adjusted for the results obtained." *Loranger* [*v. Stierheim*], 10 F.3d [776,] 781 [(11 th Cir. 1994)]. In addition, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983).

> The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman* [*v. Housing Authority of Montgomery*], 836 F.2d [1292,] 1303 [(11th Cir. 1988)]. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.... A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted)

*Id.* at 427.

rates, and whether a request for an upward adjustment of the lodestar is warranted.

*See, e.g., Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292,

1296-1302 (11th Cir. 1988).    Thus far, plaintiff has failed to bear the burden of

"documenting the appropriate hours and hourly rates."    *American Civil Liberties*

*Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

With regard to the hourly rates that plaintiff's counsel propose, Herman

Watson, Jr., and Joe R. Whatley, Jr., state:

> the hourly rates used to compute [class counsel's] respective lodestar
> amounts are based on hourly rates that are consistent with billing rates
> customarily charged by attorneys with comparable national practices in
> complex civil and class action litigation of this type, the rates prevailing
> in their respective communities for comparable work performed by
> similarly qualified attorneys and/or rates for which these firms have
> been awarded fees in other class action proceedings.[7]

The court cannot give much weight to this evidence because Watson and Whatley are

evaluating hourly rates that they themselves billed, along with other class counsel.

*See Norman*, 836 F.2d at 1299 ("Satisfactory evidence at a minimum is more than the

affidavit of the attorney performing the work.") (citing *Blum v. Stenson*, 465 U.S.

886, 896 n.11, 104 S. Ct. 1541, 1547 n.11, 79 L. Ed. 2d 891 (1984)).

Plaintiff also offers the declaration of Nicholas Roth, an attorney practicing in

---

[7]Doc. no. 107 (Plaintiff's Evidentiary Submission), Joint Declaration of Watson and Whatley, ¶ 68.

Decatur, Alabama, who has "prosecuted and defended complex litigation including class actions" during his lengthy career as attorney.[8]  Roth stated:

> The lodestar rates of the plaintiffs' lawyer in this case is . . . reasonable. In my experience with class action litigation, I have commonly encountered attorney rates that range from $450 to $750 per hour for partners and $200 to $350 per hour for associates. Moreover, my review of reported rates over the past few years by the National Law Journal for firms of similar caliber, sophistication, and practice indicates that they have similar hourly rates, without the same risks and delays in payment experienced by Class Counsel."[9]

Roth's declaration gives only some support to class counsel's assertion that their hourly rates are reasonable. "The weight to be given to opinion evidence . . . will be affected by the *detail* contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Norman*, 836 F.2d at 1299 (emphasis supplied).

Plaintiff's evidence also does not permit the court to conduct a meaningful analysis of the number of hours billed by class counsel.  Watson and Whatley state that "specific tasks and responsibilities were assigned to co-counsel in a manner to effectively and efficiently conduct pretrial and trial preparation and avoid

---

[8]Doc. no. 109 (Plaintiff's Supplemental Evidentiary Submission), Affidavit of Nicholas Roth, ¶ 1.

[9]*Id.*, ¶ 6.

unnecessary duplication of effort or wasteful expenditures of time and expense."[10]
While this may be true, "generalized statements that the time spent was reasonable
or unreasonable . . . are not particularly helpful and not entitled to much weight."
*Norman*, 836 F.2d at 1301.    Individual members of class counsel also state the
number of hours each devoted to the present case.[11]  This raw data alone does not
assist the court in determining whether the hours billed were "'excessive, redundant
or otherwise unnecessary.'" *Id.* at 1301 (quoting *Hensley v. Eckerhart*, 461 U.S. 424,
434, 103 S. Ct. 1933, 1939-1940, 76 L. Ed. 2d 40 (1983)).

The court recognizes that producing sufficient evidence to satisfy a lodestar
analysis is particularly difficult in the context of a class action such as this one.  By
the court's count, six different law firms pooled the efforts of 73 individuals to
prosecute this case, including 28 law partners, 24 associates, 12 paralegals, three "law
clerks," three "investigators," one "contract attorney," one "runner," and one attorney
"of counsel."[12]   However, the court encourages class counsel to treat 42 U.S.C. §
1988(b), and the requisite "lodestar" analysis, as if it were their *only* means of

---

[10]Doc. no. 107 (Plaintiff's Evidentiary Submission), Joint Declaration of Watson and Whatley, ¶ 70.

[11]Doc. no. 107 (Plaintiff's Evidentiary Submission), "Time Reports" at Tabs A(3)-(10).

[12]The court bases these figures on doc. no. 107 (Plaintiff's Evidentiary Submission), Tabs A(3)-(10), at time reports of respective firms.

recovering fees and expenses.  This is particularly true if plaintiff finds, as the court did, that the Eleventh Circuit has not resolved the issue of whether the court may preempt a fee-shifting statute with the common fund doctrine.

An appropriate order will be entered contemporaneously herewith.

DONE this ___*29th*___ day of October, 2004.

United States District Judge